E. P. WHEAT, RESPONDENT, APPELLANT, v. PLATTE CITY BENEFIT ASSESSMENT SPECIAL ROAD DISTRICT AND STATE HIGHWAY COMMISSION OF MISSOURI, APPELLANT.—59 S. W. (2d) 88.

Kansas City Court of Appeals. April 3, 1933.

*Wm. Bush* for respondent Wheat.

*Greshem & Greshem* for appellant.

BLAND, J.—This cause was tried before the court upon an agreed statement of facts, wherein it was agreed that the action was for money had and received. The action is based upon a loan made by the plaintiff to defendant, Platte City Benefit Assessment Special Road District of Platte County, to be used by it in the construction of a road. The court rendered judgment in favor of the defendant,

State Highway Commission, and against the defendant, Platte City Benefit Assessment Special Road District of Platte County (hereinafter called the Road District), in the sum of $883.96, with interest at the rate of eight per cent per annum, from January 5, 1922, the two items aggregating $1447.64. The defendant, Road District, appealed from the judgment against it and plaintiff appealed from the judgment in favor of the defendant, Highway Commission. The appeals were granted to the Supreme Court on the theory that constitutional questions were involved, but that court found that there was no such questions in the case and transferred the cause to this court.

The Road District was organized in 1920, under the provisions of Article VIII, Chapter '98, Revised Statutes 1919. There is no controversy as to the legality of the organization of the district, and none concerning the issuance of the tax bills involved herein. In reference to such bills section 10844, Revised Statutes 1919, provides, in part, as follows:

"If any such special tax bills be unpaid at the expiration of thirty days after the date of such order, the commissioners may borrow money not exceeding the aggregate amount of such special tax bills as are then unpaid, and at a rate of interest not exceeding eight per cent per annum, and as such unpaid special tax bills are paid, shall draw warrants on the county treasurer for the amount of such payments, to pay whatever may be so borrowed, with interest thereon; but neither the road district nor the commissioners shall be obligated to pay whatever may be so borrowed, or interest thereon, except out of the collections of such unpaid special tax bills. Money so borrowed shall be deposited with the county treasurer to the credit of such road district. . . . If any money should be borrowed by the commissioners, it shall be repaid, with interest thereon, out of the collections of such special tax bills as were unpaid at the time such money was borrowed."

The total amount of the tax bills issued against the property in the district amounted to the sum of $39,452.08. They became due on January 5, 1922. After approximately $9,000 of the bills had been paid by the property owners, against whose property they had been issued, the Road District, shortly after the last mentioned date, borrowed from the plaintiff, under the provisions of section 10844, the sum of $30,000 upon the security of the unpaid tax bills. As the law provided that the money raised upon these bills, including that borrowed, should go to the construction of the road for which the tax bills had been issued, the agreed statement of facts recites that: "It was generally understood both by the plaintiff and the commissioners of the Road District that said money ($30,000) would be used in the construction of the improvement for which said tax bills were issued."

The facts further show that notes were executed by the commissioners of said Road District, to evidence said loan, and delivered to plaintiff as provided by section 10844; that the tax bills were delivered to the county treasurer of Platte County, in which the district was located, "to be held and collected as provided by law for the payment of the indebtedness created by said loan."

· After the loan was made the whole amount of $30,000 borrowed from plaintiff, together with the sum of $8,000 in the hands of the road commissioners, was, on April 28, 1922, delivered over to the State Highway Commission in the belief by both that such procedure was authorized by the Centennial Road Law (see Laws of Missouri, 1921, Extra Session, pp. 131, 165, 166). This was all of the funds in the hands of the road commissioners and the money was delivered over to the State Highway Department for the purpose of improving the road provided for in the organization of the Road District.

However, the State Highway Commission not only made certain changes in the route of the road, but it changed it to a higher and costlier type of construction. All of the tax bills, with interest thereon, were paid, with the exception hereinafter noted, and the proceeds thereof turned over to the plaintiff, except the sum of $883.96, which sum was not turned over to plaintiff, because it was never received for the reason that the tax bills issued against several tracts of land in the district owned by one J. W. Couch, aggregating that sum, were declared invalid by the Supreme Court (see Platte City Benefit Assessment Special Road District v. Couch, 320 Mo. 489). The Supreme Court held that the tax bills were void because the route of the road had been materially changed and a different type of road was built than that contemplated, costing a much greater sum, and that the road that was built, the statute provided, should be built at the expense of the State; that the Legislature in enacting the Centennial Road Law, supra, "did not intend . . . to authorize a diversion of funds raised by special assessment under Article VIII, Chapter 98, for one purpose, and their application to another under different auspices." [l. c. 499.]

The Highway Commission in constructing the road used its own funds as well as some of the money turned over to it by the Road District and that part of the latter's funds not used were turned back to it in 1925 and 1926, before any demand was made on the Highway Commission by plaintiff. The commission returned, in two installments, an aggregate of $6488.93 to the Road District. This money was refunded proportionately by the Road District to the taxpayers therein.

The agreed statement of facts further recites that the alteration made in the course of the road by the Highway Commission, after the loan was made, was without the knowledge and consent of the plaintiff and that the Road District had no part in such alteration. It

further recites that the plaintiff had no knowledge until December, 1924, of the fact that the money he had loaned the district had been turned over to the State Highway Commission, or that the course of the highway had been changed.

The petition alleges that plaintiff "loaned" the money to the Road District "under the express agreement, contract and understanding that said sum . . . was only to be used and applied to the construction of the improvement legally authorized by said proceedings for the organization of said district and the assessment of said special taxes, and that said special taxes which were then legal, valid, binding and subsisting liens upon the respective tracts of land in said Road District, were to be collected by said special Road District and said loan repaid to plaintiff. It further alleges that all of the money "loaned" has been repaid with interest "except the amount due on certain special tax bills issued against the land owned by one J. W. Couch;" that suit by the Road District against Couch resulted in the Supreme Court holding that the tax bills issued against the land of Couch were void "for the reason that said defendant Road District had turned over and delivered the funds of said district to said State Highway Commission for the improvement of a different road, and that said money of said taxpayers and of this plaintiff had been diverted, misappropriated and misapplied to another and different purpose, and to the improvement of a different highway than that authorized by the special assessment proceeding aforesaid."

Plaintiff further alleges in his petition that "by the acts and conduct aforesaid the said defendant district has converted the money and property of the plaintiff and has wrongfully and illegally misused and misapplied the money of the plaintiff which said defendant district received as aforesaid from this plaintiff, and has failed, neglected and refused to restore said funds to the plaintiff in the sum of $883.96 together with interest thereon at the rate of eight per cent per annum, from January 5, 1922."

The petition further alleges that the "defendant, State Highway Commission of Missouri, with full knowledge of all the facts herein alleged, aided, abetted, assisted, and joined with the defendant, Platte City Benefit Assessment Special Road District of Platte County, in the conversion of plaintiff's money, property and funds, and that said defendants had and received the money and property of plaintiff as herein alleged." The petition prays judgment in the sum of $883.96, together with interest at the rate of eight per cent per annum, from January 5, 1922.

Plaintiff states in his brief that he "sues the defendants Road District and the State Highway Commission for his money received and misappropriated and applied to a different improvement than the one authorized to be constructed by the Road District," and that, as the State Highway Commission "received the plaintiff's money with

knowledge of its trust character, and misapplied and misappropriated the same, the plaintiff is entitled to a judgment against said Highway Commission for the amount sued for in his petition.''

Plaintiff has been repaid all of the money loaned by him to the Road District with interest, except the sum of $883.96, represented by the Couch tax bills, for which sum this action has been brought by the plaintiff, and we are not now concerned with any other part of the money loaned by him.

In determining the appeals in this case, it is proper, first, to investigate some of the rules relative to the nature of an action for money had and received. Generally, such an action is proper when defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to plaintiff. While the action is one at law it is governed by equitable principles. [41 C. J., pp. 28, 29; Holland Land & Loan Co. v. Holland, 317 Mo. '951.] However, ''the action does not lie unless the money was received for the use of plaintiff.'' [41 C. J., p. 49.]

''Although it has been held immaterial whether plaintiff's title is legal or equitable, he cannot recover in an action for money had and received unless he has some title to, or interest in, a particular fund in the hands of the party sued.'' [41 C. J., p. 53.]

If any trust relationship ever arose in this case it must have been at the time the contract of loan was made or the money was turned over by plaintiff to the Road District. [1 Perry on Trusts (6 Ed.), secs. 82, 133.] The general rule is that:

''A loan of money without fraud by the borrower merely creates the relation of debtor and creditor, and no rule of equity transforms such a transaction into a trust or creates the relation of trustee and cestui qui trust between the borrower and lender.'' [Maupin v. Longacre, 288 S. E. 54, 57.] [See, also, Pitts. Natl. Bank of Commerce v. McMurray, 98 Pa. 538; In re Perpall, 261 Fed. 858; Butterfield v. Butterfield, 79 Ark. 164; Brackets, Admr., v. Boreing's Admr. (Ky.), 110 S. W. 276, 278; Cox v. St. Anthony Bank & Trust Co., 41 Idaho, 776.] There is nothing tending to show fraud on the part of the Road District in borrowing the money from plaintiff. In fact nothing of the kind is claimed by him.

The statute of which section 10844, Revised Statutes 1919, is a part, of course, contemplates that money borrowed under that section shall be used for the purpose of building the contemplated road, by the road district, under the plans already made and it could hardly be said otherwise than that plaintiff's money was loaned for the purpose of building that road; but it is not in every case where one loans money for a particular purpose that the lender has any interest in the money after it is loaned and it is but seldom that when the transaction is a loan, the borrower becomes a trustee for the lender. If A loans B the sum of $100 to make a trip to New York, for B's own

purposes, but B uses the money to buy a suit of clothes, A has no action for money had and received on the theory that B became a trustee or upon any other theory, as the transaction would be a pure loan. [See cases last cited.]

It is, therefore, proper to inquire into the reason the statute provides that the money loaned should be used in the construction of the road that had been planned. The primary purpose, of course, of this is for the protection of the landowners against whose land the Road District had issued the tax bills, which were liens upon the land. The statute, under which the road was originally projected, shows that the scheme of building the road is always initiated by the landowners themselves. Of course, the law protects them against diversion of the money raised by liens created upon their lands by providing that the money should be spent for the purpose intended.

However, we do not think that plaintiff had no interest whatever in the matter. The statute, section 10844, furnishes no other means for the payment of his loan except collections from the tax bills. Neither the Road District, itself, nor its commissioners became liable to him. There may have been (but we need not say under the circumstances here present that there was) an implied agreement between plaintiff and the Road District that it would not do anything to impair the validity or value of the tax bills upon which it borrowed plaintiff's money. We say that we need not inquire into this matter because no such theory of recovery is advanced in this case, nor can it be, under the nature of the cause of action brought by plaintiff. If there were an implied agreement and it is one that can be enforced against a corporation of this kind, then plaintiff's cause of action would be for the breach of the implied contract and not for money had and received. If such was plaintiff's rights and the turning over of the money that he loaned to the Road District by it to the State Highway Commission invalidated any of the tax bills or, it was the intention of the District that the State Highway Commission should use it in a way that would result in making them void, then the Road District violated its implied agreement, if any, with plaintiff. However, we might say that the agreed statement of facts recites that said "Road District had no part in altering the course of said road."

The view we have taken of the case does not make it necessary for us to go into the question as to whether the Centennial Road Law, supra, authorized the turning over of the funds by the Road District to the State Highway Commission. Plaintiff does not dispute that it did have authority to so turn over said money, but states that if such statute gives such authority, it is void. Of course, the question of the validity of the statute is not now in the case, if it ever was, since the Supreme Court transferred the cause to this court.

There is no question but that this was a loan, and nothing more, made by plaintiff to the Road District and that plaintiff had no

interest in the money, as such, after it was loaned to that body. As before stated, he did have an interest in the matter of the diversion by the Road District, of the money that he had loaned to it, in such a manner as to invalidate the tax bills which constituted the sole security for his loan. But this gave him no interest in the money itself. That this money was a pure loan at interest is not only shown by the agreed statement of facts but by the allegations of the petition, in which the transaction is referred to time and again as a *loan*, upon which plaintiff seeks *interest* at the rate of eight per cent per annum. The facts themselves show that the loan was made under an agreement that interest should be paid upon the debt. There was no agreement that the money be kept separate and apart from other moneys for any particular purpose of plaintiff's.

The loan did not become a trust fund in any private sense. There is not even any claim, or facts disclosed, tending to show that plaintiff was a taxpayer in the Road District. But even if he were it would make no difference. While it is said that a municipal corporation holds all of its property in trust for public use none of its taxpayers or public have any private interest in its funds or property, but the interest that they have is a public one in common with all other taxpayers or members of its public. [Kinney v. Astoria, 108 Ore. 514; Young v. Moor, 144 Ga. 401.] Road districts have been classified as *quasi*-public corporations. [State ex rel. v. Hefferman, 243 Mo. 442, 447.]

In support of his contention that this loan in the hands of the Road District was a trust fund, plaintiff offers this suggestion:

"If I give A twenty thousand dollars to build an apartment building upon my lot, it cannot be denied that the funds in the hands of A are trust funds to be used for the purpose for which they were received."

Plaintiff cites no authority in this connection, but assuming that what he says is true, his supposititious case is not at all like the one now before us. If plaintiff had any lien on the road, itself, the two cases might be similar, but plaintiff did not lend his money upon the road, itself, but upon the sole security of the tax bills and, as before stated, the only interest he had in the matter was that the tax bills remained good for the amount of money that they called for. As far as the actual money loaned was concerned, that became the property of the Road District, free from any claim of the plaintiff, except that plaintiff possibly had a right to prevent the use of the money in such a way as to invalidate or impair the validity or value of the tax bills. Having no interest in the money itself, as such, he cannot sue upon the theory of money had and received, or that the money loaned became a trust fund for him in the hands of the Road District. It is, therefore, apparent that in this kind of an action he can neither recover against the Road District nor the State Highway Commission.

To permit a recovery against the Road District in this case would be circumventing the statute which says that the Road District shall not be liable for the money borrowed by it. It will be presumed that plaintiff contracted with the Road District in reference to the repayment of his loan, in view of the statute making the district free from any liability for its repayment. [Mansur v. Murphy, 49 Mo. App. 266.] Any agreement, express or implied, that the district should be responsible for the repayment to plaintiff of the money, would be void. [Hillside Security Co. v. Minter, 300 Mo. 380.] One who lends money, agreeing to look to certain security for repayment cannot recover from the recipient of the money if the security later proves to be worthless. [State ex rel. v. Reynolds, 245 S. W. 1065.] It would appear that what the State Highway Commission did, instead of the act of the Road District, invalidated the Couch tax bills, as the district had no knowledge that the commission was going to build any road except the one planned and laid out by the district. We have examined the cases cited by plaintiff and find them not in point.

In his petition plaintiff also seeks to recover against the Road District on the theory that, when the State Highway Commission turned over to the Road District the aggregate sum of $6488.92, the unpaid balance on plaintiff's loan should have been paid to him out of the amount received by the Road District from the State Highway Commission, instead of the money being refunded to the taxpayers in the Road District. In other words, plaintiff's theory is that, under these circumstances, he is entitled to recover from the Road District on the theory of money had and received by it from the Highway Commission for his benefit. However, it is apparent that this theory is erroneous for the reason that the money involved in this proceeding was never in the hands of the Road District. The money that plaintiff is seeking to obtain has never been collected, as the Couch tax bills were declared void. Therefore, it never got into the hands of the Road District directly or indirectly and, therefore, it was never in the hands of the Highway Commission to be returned. Of course, if the $30,000 turned over by the Road District to the State Highway Commission was plaintiff's money, instead of the Road District's, and the Highway Commission returned to the Road District any part of plaintiff's money and the district failed to pay plaintiff the amount coming to him, another situation might possibly be presented; but, as we have already stated, plaintiff had no interest in the *money*, as such, *that he loaned* to the Road District.

From what we have said it is apparent that plaintiff is not entitled to recover from either defendant. The judgment in his favor against the Road District is reversed and the judgment in favor of the State Highway Commission is affirmed. All concur.