**Charles F. BERRY, Respondent,**

v.

**Roxane BERRY, Appellant.**

**No. WD 33322.**

Missouri Court of Appeals, Western District.

May 10, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 28, 1983.

Application to Transfer Denied Aug. 16, 1983.

Dennis J. Owens, Kansas City, for appellant.

Edmund R. Lipowicz, II, Independence, for respondent.

Before SOMERVILLE, C.J., and SHANGLER, PRITCHARD, DIXON, WASSERSTROM, MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Wife appeals from a judgment in a dissolution case which gave to the husband custody of their two children, with visitation privileges to wife; ordered payment by wife to husband of $300 per month child support; denied maintenance and attorney's fees to wife; and awarded the marital home to the husband but required sale thereof upon the occurrence of the earliest of three events, namely, remarriage of husband, sale of home, or the eighteenth birthday of the youngest son, who was three years old at trial time. Upon sale of the house the proceeds thereof, after deducting the balance of the mortgage and after deducting sale expenses, were to be divided equally between the parties.

The parties resided at the time of their separation at 10630 Indiana in Kansas City, Missouri. At the time of the trial the husband lived in the house with their two children. The parties were married on June 29, 1974. They had two children, James Hugh Stanton, who was six at the time of trial, and Michael Dean, who was three at the time of the trial.

The parties' final separation took place on July 8, 1980. The wife at that time was having an extramarital romantic affair with a co-worker at the post office, an affair which, according to her trial testimony, terminated about six months later, in January, 1981. Wife left the marital home. She testified at the trial that she was driven violently from the home, but the husband testified that she left of her free will. The two boys remained in their father's custody from the time of the separation up to the time of the trial.

Shortly before Labor Day in 1980, the wife's brothers came to the house while

husband was absent, and hauled away much of the furniture. Husband testified that they broke into the house, but wife said they might have had a key. A week later she came with her brother to get the boys. Husband said it was not a day when she was entitled to visitation and that she had not given him any advance notice. An altercation ensued. The wife and her brother took the younger child by force. The husband tried to prevent their taking the younger child and perhaps did prevent their taking the older one, by use of a butcher knife. The knife was used to threaten the brother and to deflate the tires of their car. The husband's testimony and the wife's testimony give widely divergent complexions to this encounter.

Wife worked for the United States Post Office and was making approximately $21,000 per year. Husband worked for Associated Wholesale Grocers and was making about $18,500 per year.

The net marital estate of the parties was practically zero. We will go into that later in the opinion.

The wife does not appeal from the dissolution provision of the decree, but she alleges error in the child custody and property division portions of the decree, and also alleges error in the trial court's denying her motion to disqualify the trial judge and in his refusal to grant an evidentiary hearing thereon.

I

Wife complains of the trial judge's denial of her motion to disqualify him, and of his refusal to hold an evidentiary hearing thereon. The motion for disqualification was filed after the evidence in the case had been concluded and while the court had the same under advisement. The circumstances were as follows: The trial of the case before Judge Gaitan started on May 14, 1981, continued on May 22 and on June 3, and was concluded on October 23. The interval from June 3 to October 23 was accounted for by the judge's absence for a judicial seminar, the preparation by the juvenile

court of a home study, and scheduling difficulties.

Shortly after the final evidentiary hearing held on October 23, the trial court sent to counsel for the parties a draft of his proposed decision on all the contested matters in the case and asked husband's counsel to prepare a decree for the court's signature.

The wife thereupon on November 12 filed a motion to disqualify the judge. The full text of the motion follows:

COMES NOW the Respondent Roxane Berry, pursuant to Supreme Court Rule 51.07 and Supreme Court Rule 2 and moves that the Honorable Fernando J. Gaitan disqualify himself from all further participation in the present case and that the case be assigned to a new judge as provided in Rule 51.07.

The trial court immediately set a hearing on the motion for November 18.

On November 18 an in camera conference was held with the attorneys for the parties present. Wife's attorney made the following statements, which we elect to set out in full:

MR. POLETTE: In response, we believe that the Court should disqualify itself from further hearing on this matter basically for the reasons set forth. It came to the attention of the respondent, after the proposed order was sent out, that you had sent out a letter that you intended to award the children to the petitioner and various other things were in the letter regarding the property and maintenance and distribution of the debts, and a couple of days after that, my client advised me that she had been talking with her children and learned that, in fact, your wife, Sylvia Gaitan, was the school teacher for the oldest child in this matter and that she thought that was the case and I did a little checking and found that, in fact, that was the case, and she also did some checking and verified that, in fact, your wife is the home room teacher of the child.

It has been discovered that Mr. Berry, the petitioner, on several occasions has

availed himself of an observation program with the school; he has met with your wife and has sat in her classroom and observed her teaching technics of his older son and discussed the child's progress on various occasions; he is active in the P.T.A. and has worked on several functions, school carnivals and such, wherein he has contacted your wife, in a social sense in the P.T.A. anyway, and we feel that prior to a decision being handed down and/or judgment being entered, that the Court should disqualify itself, pursuant to Supreme Court Rule 2, Canon 3, which is sub-section C, entitled "Disqualification," and the various lists there states when a judge should disqualify himself.

We are going to have evidence today, because the Court back on November 12, 1981, prior to this date, sent out an order saying a hearing was set for November 18, 1981, which, of course, is right now, and pursuant to that, we did subpoena your wife, Sylvia Gaitan, the subpoena has been returned and is now in the court's file and I did receive a call yesterday from your court advising that the hearing had been cancelled and all that was going to happen was a discussion and that your wife had been excused. I am [not] quite certain what happened, whether the Court entered a quash on the subpoena or whether you have just excused your wife from testifying as to what type of contacts, whether she has passed any of the information along concerning Mr. Berry's with her, and whether or not he appears to be a good parent, a conscientious person, that might have a bearing on the Court's decision. If you are receiving this type of conversation, we suggest the subpoena should [not] be quashed and evidence should be heard and we would like to offer proof as to what I have been saying. I have my client here and I would like to make an offer of proof on the information I have just gone on as to how my client learned of this and the interrelations between your wife and the petitioner, Charles Berry.[1]

We believe that, in fact, had your wife been called and testified, that would have been another ground for disqualification, but we believe it was necessary to call her and we still believe it is necessary to call her. We understand the rules are to recuse yourself if your wife is to be called as a material witness in a case you are hearing.

It developed that the older of the Berry children, Jimmy, had entered Mrs. Gaitan's homeroom class at the beginning of the school term in late August or early September. Judge Gaitan stated in the record that he was unaware of that fact until the motion for disqualification had been filed, when he learned from his wife (apparently as a result of the service of the subpoena upon her) that the child was in her class.

█ Judge Gaitan declined to have an evidentiary hearing and denied the motion for disqualification.

We hold that in the circumstances of this case the court did not err in denying the motion for disqualification or in refusing to hold an evidentiary hearing on the motion.

We note first that it was not alleged in the motion, nor was it offered to be proved, that Mrs. Gaitan had communicated to Judge Gaitan any information or impressions she had gained as Jimmy's homeroom teacher, or any information or impressions she had about the father's suitability as a parent. It is not alleged nor offered to be proved that she had any information or held any opinion favorable or unfavorable to Mr. Berry's custody as opposed to Mrs. Berry's custody, nor that she even knew a custody fight was in progress, let alone that it was pending before her husband. The most the wife alleged in her motion, and the most that was offered to be proved, was that there was opportunity for Judge Gaitan to have received information outside the record which might have colored his view of the case. Every judge in every case has an opportunity to receive information or opin-

1. We have added in brackets counsel's apparent meaning.

ions outside the courtroom, which have the potential to affect his consideration of a case pending before him. The mere opportunity to have received outside-the-courtroom potentially contaminating information or influence is certainly no grounds for disqualification of a judge. The wife was asking for an evidentiary hearing in this case solely for a "fishing expedition," if we may risk the muddying of thought by the use of that pejorative term.

It is to be noted also that the motion for disqualification came after all the evidence had been heard in a four-day trial, held over a space of six months, and after the court had announced his decision. The disposition of the case awaited only the preparation and entry of a formal decree.

We hold that the court did not abuse his discretion in declining to disqualify himself. *In re Federal Skywalk Cases,* 680 F.2d 1175, 1183 (8th Cir.1982). The Federal statute, 28 U.S.C. § 455(a) (Supp. V 1982), is much like our Supreme Court Rule 2, Canon 3C(1). Each of them requires a judge to disqualify himself "in a proceeding [or "any proceeding," 28 U.S.C. § 455(a)] in which his impartiality might reasonably be questioned...." Rule 2, Canon 3 C(1). In *In re Federal Skywalk Cases,* 680 F.2d at 1183, Judge McMillian wrote:

> 28 U.S.C. § 455(a) requires a judge to disqualify himself if a reasonable person would have factual grounds to doubt the impartiality of the court. *Blizard v. Frechette,* 601 F.2d 1217, 1220 (1st Cir.1979). The determination for the district judge to make is whether "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Once that determination has been made, our role on review is limited to deciding whether the district court's evaluation of the claim of partiality or prejudice amounted to an abuse of discretion. *Blizard v. Frechette,* 601 F.2d at 1221.

The same case says also, 680 F.2d at 1184: "A claim of bias must be evaluated in light of the full record, not simply in light of an isolated incident. See *Walker v. Bishop,* 408 F.2d 1378, 1382 (8th Cir.1969)."

The court there looked at the whole record, and noted that the judge's decision there, although held to be erroneous, was based upon an extensive record and was carefully reasoned. We observe in the present case that the trial court's judgment is based upon an ample record and is entirely in accord with the law and the evidence (with the single exception of the disposition of the marital home, which is treated elsewhere in the opinion).

■ Wife says that the court should have disqualified himself on the basis of Subsection (1)(d)(iii) of Rule 2, Canon 3 C, which mandates disqualification in a proceeding where his spouse "is to the judge's knowledge likely to be a material witness in the proceeding." We note in this case that Mrs. Gaitan was not being called to testify on the merits of the proceeding, but on the disqualification motion itself. The rule would undoubtedly have required Judge Gaitan to disqualify himself in the hearing *on the disqualification motion,* had there been one, but it does not require him to disqualify himself in the main case.

We hold that the trial court, in the circumstances of this case, did not abuse his discretion in denying the motion for disqualification, or in declining an evidentiary hearing on the motion. We do not hold that the trial judge did the only correct thing, or even that he did the best thing. Judge Dixon in his concurring opinion expresses the view that it would have been the preferable course for him to have called in another judge to hold an evidentiary hearing to determine the facts. But in the circumstances of this case, we hold the trial judge was within an allowable discretion in disposing of the disqualification motion as he did.

The concurring opinion of Judge Dixon says also that the trial judge is under a duty to disqualify himself in the circumstances described in Rule 2, Canon 3 C—that it is not discretionary with him. That, too, is correct, and this opinion does not hold the contrary. We hold, however, that none of the *factual bases* for *mandatory*

*disqualification* under Rule 2, Canon 3 C were present in this case.

## II

Wife says the court erred in awarding the custody of the children to the husband.

We have closely read the testimony of the case, bearing upon the suitability of the respective parties to be primary custodians of the children. To recount the evidence would stretch this opinion to a cumbersome length and would aid no one. One may select testimony from this record which presents the husband as cruel, psychotic, volatile and unstable. On the other hand, one could select testimony which presents him as a kind and stable person, and a concerned, affectionate and wise parent. Likewise the wife is shown in a favorable or unfavorable light depending upon the point of view of the witness.

The trial court had the task of judging the credibility of the witnesses and of assessing the weight and value of the testimony. We defer to his judgment and will not interfere with the decision on this point. His decision is amply supported by the testimony. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## III

The wife makes two complaints about the decree of distribution of the marital property. She complains first that the decree does not evaluate the property distributed to the parties, and says we should remand the case for that purpose. It is true we have followed that course where the absence of valuation, where valuations were disputed, has made it impossible for us to review the property division. *Marks v. Marks*, 618 S.W.2d 249, 250–51 (Mo.App. 1981); *Fields v. Fields*, 584 S.W.2d 163, 167 (Mo.App.1979). This is not such a case.

The parties were given their respective motor vehicles—he a 1976 Chevrolet and a 1972 Pontiac, and she a 1979 Honda, subject to their respective liens.

She was given household goods in her possession, he the household goods in his possession. She was given a dresser, mirror and chest of drawers still in his possession, and he was given tools and a stereo in her possession. None of these had any unusual value, nor were the valuations disputed. The omission of valuations in this particular case places us at no particular disadvantage in reviewing the division of marital property and we will not remand the case on that account, particularly where wife did not ask for the values to be set out in the decree. *Cross v. Cross*, 622 S.W.2d 759–60 (Mo.App. 1981); *Fastnacht v. Fastnacht*, 616 S.W.2d 98, 102 (Mo.App.1981). The house was valued by the court at $41,700, subject to a mortgage balance of $34,389.32.

The wife complains that she was assigned $7,700 of the marital debts for payment, while he was assigned $2,700 for payment. He was also assigned for payment the mortgage on the house, the balance of which the decree placed at $34,-389.32. Of the $7,700 in debts assigned to the wife for payment, $3,600 appears to have been on a 1978 Chevrolet automobile which the wife took with her at the time of the separation, and later sold. The loan had been paid off at the time of the decree and was no longer in existence. She had then purchased a 1979 Honda which the court awarded to her and on which she owed $3,500. We do not find that this disparity in the amount of debts assigned to the respective parties for payment makes the decree erroneous, § 452.330, RSMo (Supp.1981).

## IV

The wife makes one other complaint about the decree. That is the disposition of the marital home, which wife says has been left in "co-ownership" between her and husband, a disposition which has been condemned by some of our cases. *In re Marriage of Pine*, 625 S.W.2d 942, 946 (Mo.App. 1981); *In re Marriage of Buthod*, 624 S.W.2d 119, 121 (Mo.App.1981). We do not so interpret the decree. It says the husband "shall have and retain the marital home located at 10630 Indiana." In the

context of other language in the decree, it is a reasonable construction that it was the trial court's intent to vest title in the husband. We do not need to decide that question, though, for we can clarify that by directing, as we do, the entry of a new decree with respect to the marital residence.

The husband admits in this court that he is remarried, an event which under the decree triggers the duty to sell the property and to distribute the proceeds in accordance with the terms of the decree. The mechanics of the sale are not spelled out in the decree and it is too much to expect these parties to agree upon a plan for sale. Furthermore, the wife is entitled to have some return on her interest in the property from and after the date of husband's marriage when his duty to sell arose. The decree leaves open all sorts of opportunities for disagreement and litigation which we believe may be avoided with fairness to the parties. These conditions, along with those mentioned by Judge Dixon in *In re Marriage of Pine,* supra, lead us to direct a revision of the decree, adhering as closely as possible to the economic results contemplated by Judge Gaitan's decree.

█ The court decree calculated the then-value of the wife's interest (called therein a "lien") at the sum of $3,655.34, "prior to deduction of her share of the charges and expenses of sale." We remand the case to the trial court for the entry of a new decree with respect to the marital home: Title to the marital home is to be vested solely in the husband. The wife is given personal judgment against the husband for the sum of $3,000 with interest from and after August 25, 1982 (the date of husband's remarriage, according to documents filed here), at the rate of 9% per annum, principal and interest payable January 1, 1984. Husband will have the privilege of prepayment with interest accrued to the date of payment. Said judgment and interest constitutes a lien upon the marital residence, enforceable by special execution if unpaid at the due date of January 1, 1984. See *Nowels v. Nowels,* 637 S.W.2d

163, 167 (Mo.App.1982); *In re Marriage of Pine,* 625 S.W.2d at 946; *In re Marriage of Buthod,* 624 S.W.2d at 122.

## CONCLUSION

The cause is remanded to the trial court with directions to enter up a new decree, modified as directed in the preceding paragraph. In all other respects the decree is affirmed.

SOMERVILLE, C.J., and WASSERSTROM and MANFORD, JJ., concur.

SHANGLER and PRITCHARD, JJ., concur in separate concurring opinion of DIXON, J.

DIXON, Judge, concurring.

I concur in the result of the majority opinion because I am convinced the circuit judge had, prior to his decision, no information concerning the issues in this case arising from his wife's position as the teacher of the child. Nor does this record reveal that he was even aware of the wife's possible knowledge before he decided the case. I am convinced that the issue was pretextual on the part of the wife's counsel to avoid the already-announced determination of the issues by the circuit judge. Thus, my concurrence in result is based upon my belief that these facts demonstrate there was no appearance of impropriety.

I believe that the portion of the majority opinion that discusses disqualification may be misleading to trial judges. I agree that the opportunity to obtain information does not disqualify. I am convinced, however, when such an opportunity exists, the judge has a duty to act.

When a trial judge who is sitting as a fact finder obtains information dehors the record, he must disqualify himself. A judge in the role of a fact finder is no different than a member of the jury. We do not countenance members of the jury obtaining information concerning the issues outside of the trial process, and we should not do so with a judge. When a judge has acquired knowledge of a dispute before the matter comes before him, we should require

the same disclosure that is required of a member of the jury—revelation of the nature and extent of the prior information. If the trial judge fully and fairly discloses such prior knowledge, the parties may act upon that information as they see fit, subject to the judge's inherent right to recuse himself.

Courts and judges know what everyone else knows who reads the newspapers and listens to or watches the other media. Such knowledge is presumed and does not pose the problem that privately or personally obtained knowledge presents. But when a judge has private or personal knowledge that might affect his fact finding function, he or she should disclose it to the parties. The obligation is implicit in Rule 2 Canon 3 A(4). It is explicit in Rule 2 Canon 3 C, which in pertinent part reads:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

From this it follows that when the record discloses an opportunity to obtain information that would disqualify the trial judge, the record must also disclose facts that negate any reasonable question concerning the impartiality of the judge. I believe that this record discloses facts that negate that issue, and I thus concur in the result. The fact that the judge was unaware of his wife's involvement as the teacher of the child until *after* his decision is the critical fact.

The majority opinion should resolve the dilemma of whether a trial judge should grant a hearing under these circumstances. No guidance exists in the case law for a trial judge in this situation. The record before us could have removed all doubt on the issue if a hearing had been held despite the inadequacy of the wife's pleaded assertions. Absent controlling precedent from the supreme court on the issue, it is within the power of this court to prescribe a proce-

dure to eliminate future uncertainty. In my view, a trial judge confronted with these facts could and should call upon another circuit judge to hear and rule the matter. Our review would then be a review of that trial court action aided by a full record and the findings of the hearing judge. A trial judge, confronted by a similar issue, obtains no guidance from the majority opinion and may, in fact, be misled by the court's tacit approval of the circuit court's refusal to grant a hearing in this case, which inheres in the holding that no error appears.

Nor do I concur in that portion of the majority opinion that, relying on federal authority, asserts such action is discretionary. The federal authority cited in the majority opinion has no binding effect on this court. The persuasiveness of the cited "Skywalk" cases is diminished, not only by the lack of rationale, but also by the failure of the opinion to mention that the issue has been decided differently in another circuit. In *Roberts v. Bailar*, 625 F.2d 125 (6th Cir.1980), the court, in a well-reasoned opinion, reaches an opposite result. Relying heavily on the federal legislative history, the sixth circuit held that 28 U.S.C. § 455(a) requires that a trial judge must recuse himself when his impartiality is brought into question.

To promote public confidence in the impartiality of the federal judicial system, the Congress in 1974 shifted the focus of § 455. 'Any ... judge,' § 455(a) now provides, 'shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.' No longer is a judge's introspective estimate of his own ability impartially to hear a case the determinate of disqualification under § 455. The standard now is objective. It asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge. '[I]f there is a reasonable factual basis for doubting the judge's impartiality,' the congressional committee reports on the 1974 amendment to § 455 explain, the judge 'should disqualify himself and

let another judge preside over the case.' Even where the question is close, the judge whose impartiality might reasonably be questioned must recuse himself from the trial.

*Roberts,* 625 F.2d at 129 (footnotes omitted).

Whichever view of the federal case law is correct has no application to construction of Rule 2 Canon 3 C because of significant differences between the language of the Missouri provision and the federal statute. The federal act, 28 U.S.C. § 455(a) and (b), creates by separate sections two categories of disqualification. Chapter 28 U.S.C. § 455(a) contains the less specific language:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Chapter 28 U.S.C. § 455(b) contains the specific grounds upon which disqualification *shall* occur.

Missouri Rule 2 Canon 3 C is in an entirely different framework. Rule 2 Canon 3 C(1) reads as follows:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . .

Following subsection (a) are several other circumstances requiring disqualification. Even if disqualification under the general language of Rule 2 Canon 3 C(1) were susceptible of the notion of a determination by judicial discretion, which I do not concede, when the subparagraphs are considered, such construction is not justified. These lettered subparagraphs are a clear and unmistakable direction to disqualify. Missouri case law so holds. In *State ex rel. Division of Family Services v. Oatsvall,* 612 S.W.2d 447 (Mo.App.1981) (per curiam), the court reversed twenty-four separate cases, all consolidated under that style, on the ground that the judge who had acted as an attorney in the cases should have recused himself under Rule 2 Canon 3 C(1)(b). The holding could not be more explicit that the judge has a duty to recuse. The court said:

Canon 3C(1), (Sup.Court Rule 2, Code of Judicial Conduct), requires that a judge should disqualify himself 'in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: . . . (b) he served as a lawyer in the matter in controversy . . . .' The *duty* of a trial judge to recuse when impropriety or the appearance of impropriety appears does not depend on the waiver of the issue by parties. *Frank Ham, et al. v. Ronald Wenneker, et ux.,* 609 S.W.2d 240 (Mo.App.1980). When cause to recuse appears *a judge must do so. Id.* Canon 3 D permits remittal of the disqualification under certain conditions only if the judge is disqualified by the terms of Canon 3C(1)(c) or Canon 3C(1)(d). Clearly, the associate judge had a duty to disqualify himself with respect to those cases in which he had participated as counsel, which he did not do. It is equally clear, that the circumstances under which *his duty to recuse arose* are not within the scope of any remittal procedure available under Canon 3 D, even had such been undertaken by parties and counsel.

(emphasis added) (footnotes omitted). *Oatsvall,* 612 S.W.2d at 452–53.

The case of *State ex rel. Ferrell v. Heckemeyer,* 629 S.W.2d 642, 643 (Mo.App.1982), follows the holding of *Oatsvall* and reverses, finding a violation of Rule 2 Canon 3 C(1)(c) using the following language:

It is the *command* of Rule 2, Canon 3C(1)(c) that a judge disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including instances where he knows that he 'has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.'

'The duty of a trial judge to recuse when impropriety or the appearance of impropriety appears does not depend on

the waiver of the issue by the parties. When cause to recuse appears, a judge must do so. The only exceptions are as follows:

'Rule 2, Canon 3 D permits remittal of disqualification of a judge when the disqualification arises under Canon 3 C(1)(c) or Canon 3 C(1)(d) . . . .' *Ham v. Wenneker,* 609 S.W.2d 240, 241 (Mo.App.1980). See also *State ex rel. Div. of Family Serv. v. Oatsvall,* 612 S.W.2d 447, 452[8–12] (Mo.App.1981).

(emphasis added). The language cited and relied upon is from *Ham v. Wenneker,* 609 S.W.2d 240 (Mo.App.1980), a *per curiam* opinion of this court.

The subparagraphs are but illustrations of specific fact situations in which the impartiality of the judge is apparent. The critical language is "including *but not limited to* instances where." Thus, the *duty* to disqualify is *not limited* to the specific situations set out in the canon, but also includes any situation in which the impartiality of the judge might reasonably be questioned.

The majority misapplies the concept of judicial discretion. Judicial discretion is defined in *Kasper v. Helfrich,* 421 S.W.2d 66, 69 (Mo.App.1967).

Judicial discretion is the option the trial judge has in doing or not doing a thing that cannot be demanded by a litigant as an absolute right; appellate courts will interfere with the trial court's exercise of discretion only when it has been manifestly abused; that discretion is abused only when the trial court's ruling runs against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to show a lack of careful consideration and shock the sense of justice; if reasonable men can differ about the propriety of the action taken by the trial court, then the trial court did not abuse its discretion.

That definition arises from *Harriman v. Harriman,* 281 S.W.2d 566, 571 (Mo.App. 1955), which quotes Bowers' "Judicial Discretion of Trial Courts," section 12, page 20, as follows:

The accepted understanding of the term does not necessarily, or very frequently, mean that any aspersions whatever are cast upon the trial court. Defining the two terms together, it may be said that judicial discretion is the option which the judge may exercise between the doing and the not doing of a thing, the doing of which can not be demanded as an absolute right of the party asking it to be done; and that an abuse of discretion is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances.

Bowers' definition has been approved in the following cases: *State ex rel. Rosen v. McLaughlin,* 318 S.W.2d 181 (Mo. banc 1958); *State ex rel. State Highway Comm'n v. Gould,* 592 S.W.2d 172 (Mo.App.1979); *Anderson v. Robertson,* 402 S.W.2d 589 (Mo. App.1966).

This definition precludes judicial discretion as a panacea in disqualification cases. A judge does not have two options as to disqualification under the canon; he is disqualified or he is not. There is no such thing as a little disqualification. As I have stated, I believe there is a positive duty of disclosure when such an issue arises. Upon that disclosure, there is a duty to decide the issue of disqualification. The review of that decision is not a review of a discretionary act. It is a review under the Canons and the case law interpreting them for the correctness of the decision. If on the record there is an appearance of impropriety to a reasonable person, recusal must follow.