In re $29,000.00 IN U.S. CURRENCY.

STATE of Missouri, Respondent,

v.

Michael A. GOTH, Appellant.

No. WD 35308.

Missouri Court of Appeals,
Western District.

October 16, 1984.

As Modified Nov. 27, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled
and Denied Nov. 27, 1984.

Application to Transfer Denied
Jan. 15, 1985.

Andrew J. Gelbach, Warrensburg, for appellant.

Mary Ann Young, Asst. Pros. Atty., Warrensburg, for respondent.

Before DIXON, P.J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Michael A. Goth (hereinafter Goth) appeals from a judgment declaring $29,000.00 in U.S. currency, $727.00 in U.S. currency, and a "handgun" forfeited to the State of Missouri (hereinafter State) pursuant to § 195.140.2, RSMo Supp.1983. Forfeiture of the "handgun" is not an issue on appeal as Goth disavowed ownership of same. He does, however, claim ownership of the U.S. currency and vigorously contests the legality of its forfeiture on appeal.

Underlying events which the forfeiture proceeding ultimately relate back to commenced at approximately 1:15 P.M., September 5, 1982, at Goth's residence in Holden, Missouri. At that time, a neighbor of Goth's called the Holden Police Department and reported that three men, later identified as Corum, Elmer and McGuire, had forced their way into Goth's residence. A member of the Holden Police Department immediately responded to the neighbor's call. Shortly thereafter, another member of the Holden Police Department, along with a deputy sheriff of Johnson County, arrived at the scene as "backups". Noises coming from Goth's residence indicated that a violent argument was taking place inside. The deputy sheriff, by means of a portable "P.A. System", ordered the persons inside the residence to come outside. Goth came out first, followed by Corum, Elmer and McGuire. Goth was covered with blood on and about his head, arms and back, indicating that he had been severely beaten. He was removed from the scene by ambulance and taken to the hospital. Corum, Elmer and McGuire were placed under arrest, taken to the Johnson County jail, and charged with felonious assault.

Immediately after Goth and his assailants left the scene, the officers made a cursory search of the residence to ascertain whether any other persons were still inside. No other persons were found inside the residence, nor was any currency or controlled substances found or seized, on the occasion just mentioned. The officers did observe that the residence had been ransacked and appearances indicated that a violent altercation had occurred. The officers then exited the residence and cordoned it off to "preserve evidence".

The deputy sheriff then left the scene and went to the hospital where Goth had been taken. While en route to the hospital, the deputy sheriff radioed the officers at the scene to stay out of the residence and "not proceed". One of the officers at the scene, prior to receipt of instructions by radio from the deputy sheriff, reentered the residence a second time and photographed each room. Upon receipt of instructions from the deputy sheriff via radio, the officer just mentioned exited the premises absent seeing or seizing any currency, controlled substances, or evidentiary items. Upon arrival at the hospital, the deputy sheriff asked Goth if he would give the officers permission to enter and search his residence. Goth was not under arrest, under suspicion, or in custody of any law enforcement officers at the time. At first, Goth was reluctant to give the deputy sheriff permission for officers to enter and search his residence. However, when the deputy sheriff indicated that a search warrant would be obtained to enter and search his residence, Goth told the deputy sheriff "that he was free to go in and look at anything he pleased." During the course of the conversation just mentioned, Goth also told the deputy sheriff that his assailants beat him with a "handgun".

The deputy sheriff returned to the scene and Goth's residence was entered a third time by officers to search for the "handgun" mentioned by Goth. During the course of their search the officers found and seized, in the following order, a bag containing hashish and $727.00 in currency, a vial containing traces of cocaine, a pitcher containing 38.2 grams of cocaine, and a "handgun". Shortly thereafter, Goth, who had been released from the hospital, returned to his residence at which time he was arrested for possession of a controlled substance. Goth, while being transported to the Johnson County jail by another deputy, was given a *"Miranda* warning". After engaging in general conversation with the deputy sheriff following the "Miranda warning", Goth stated that he did not want to "talk any more" until he contacted an attorney.

Following the above sequence of events, Goth on either the evening of September 5, 1982, or the morning of September 6, 1982, contacted an attorney. On the morning of September 6, 1982, Goth's attorney got in touch with the assistant prosecuting attorney of Johnson County [1] and an "agreement" was reached between the two—in essence, no criminal charges would be filed against Goth for possession of controlled substances and, in return, Goth would testify on behalf of the State at the trials of his assailants, and would talk to law enforcement officials and give them information regarding "trafficking" in drugs and other "criminal activities." Whether or not the State, as part of the "agreement", was to return to Goth any property, e.g. currency found and seized in his residence, is in controversy and will subsequently be dealt with in more detail.

After the "agreement" was entered into, and after being given a second *"Miranda* warning", Goth told one of the Holden police officers that he had a large sum of currency at his residence in envelopes hidden on a ledge under a dishwasher. The police officer, accompanied by a deputy sheriff, went to Goth's residence during the afternoon of September 6, 1982, and found and seized $29,000.00 in currency at the location described by Goth. Thereafter, the $29,000.00 in currency just mentioned was turned over to an official of the Federal Drug Enforcement Administration. The Federal Drug Enforcement Administration eventually returned the $29,000.00 in currency to the Prosecuting Attorney of Johnson County.

Goth, pursuant to the "agreement" previously mentioned, freely talked with various law enforcement officials about "trafficking" in drugs and other criminal activities of which he claimed to have knowledge, e.g., he obtained drugs in Florida and transported them to Missouri for sale, the currency found in his residence and seized by the officers resulted from his illicit drug activities, and he gave the names of several persons who he claimed were implicated in various criminal activities. Additionally, Goth cooperated, as agreed, regarding prosecution of his assailants, and the State did not file any criminal charges against Goth.

On January 7, 1983, Goth filed a petition for replevin in Division I of the Circuit Court of Johnson County, naming the Sheriff of Johnson County and one of his deputies as defendants, for return of the currency. While the replevin action was pending, the State initiated the forfeiture proceeding from which Goth's appeal lies.

In order to attain a better semblance of dispositional continuity, the points relied on by Goth on appeal, seven [2] in number, have been rearranged in the following order: (1) Section 195.140, RSMo Supp.1983, is "unconstitutional in that it violates due process" because it shifts the "burden of proof" to "claimants" to rebut the presumption that moneys, coins and currency "found in close proximity to forfeitable

---

1. The assistant prosecuting attorney referred to in this opinion is not currently serving as assistant prosecuting attorney of Johnson County, Missouri.

2. One point, divided into subpoints in Goth's brief on appeal, is treated as two separate points.

controlled substances ... are presumed to be forfeitable ..." [3]; (2) the trial court erred in hearing and rendering judgment in the forfeiture proceeding because "exclusive" jurisdiction was vested in another division of the Circuit Court of Johnson County by virtue of Goth's previously filed and pending replevin action; (3) the trial court "abused its discretion" in denying Goth's application "for a change of judge *for cause*"; (4) the trial court erred in denying Goth's motion for a "continuance"; (5) the U.S. currency in question, along with other items of evidence, offered by the State and admitted into evidence, were inadmissible because obtained by warrantless searches in violation of Goth's rights under the Fourth Amendment to the Constitution of the United States; (6) the trial court erred in overruling Goth's objections to the admission of certain statements made by Goth tracing the sums of currency to illicit drug activities engaged in by Goth because they were obtained in violation of Goth's rights under the Fifth and Sixth Amendments to the Constitution of the United States; and (7) the judgment of forfeiture was "not supported by competent and substantial evidence" because under the "agreement" entered into between Goth and the "prosecuting attorney's office", Goth would not be prosecuted for "possession" of any controlled substances and his "personal belongings and money" would be returned to him if (a) he would testify on behalf of the State at the trials of his assailants, and (b) furnish "intelligence information" to "law enforcement personnel" concerning "drug trafficking" and "criminal activities".

■ Goth's first point attacks the validity of § 195.140, RSMo Supp.1983, on purported constitutional grounds. If the validity of this statute was properly raised at the trial court level so as to be preserved for appellate review, jurisdiction of this case lies in the supreme court under Mo. Const. Art. V, § 3 (as amended 1982), and this court lacks jurisdiction to entertain Goth's appeal. In the landmark case of *City of St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372, 376 (banc 1949), procedural requirements for raising and preserving constitutional issues in general, on the basis of an evolving line of case authority, were collected and set forth: "It has long been the law that the question must be raised at the first available opportunity: *Woodling v. Westport Hotel Operating Co.*, 331 Mo. 812, 819(2), 55 S.W.2d 477. The sections of the constitution claimed to have been violated must be specified: *Robinson v. Nick*, 345 Mo. 305, 309(5), 134 S.W.2d 112, 115(11). The point must be presented in the motion for new trial, if any; *Red School Dist. v. West Alton School Dist.*, Mo.Sup., Div. 2, 159 S.W.2d 676, 677(2). And it must be adequately covered in the briefs: *McGuire v. Hutchison*, 356 Mo. 203(4), 201 S.W.2d 322, 327(8)."

Virtually without exception since 1949, cases involving the viability of constitutional issues for purposes of determining appellate jurisdiction have guided on the procedural requirements collected and laid down in *City of St. Louis v. Butler Co.*, supra. Relating Goth's first point to the record on appeal, a "Motion To Suppress All Evidence And Motion In Limine" filed in the trial court contained the following: "Mis-

**3.** Section 195.140.2, RSMo Supp.1983:

"(1) Everything of value furnished, or intended to be furnished, in exchange for a controlled substance, imitation controlled substance or drug paraphernalia in violation of sections 195.-010 to 195.320, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, or securities used, or intended to be used, to facilitate any violation of sections 195.-010 to 195.320 shall be forfeited except that no property shall be forfeited under this subsection to the extent of the interest of an owner by reason of any act or omission established by

him to have been committed without his knowledge or consent.

(2) Any moneys, coin, or currency found in close proximity to forfeitable controlled substances, imitation controlled substances, or drug paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled substances, imitation controlled substances or drug paraphernalia are presumed to be forfeitable under this subsection. The burden of proof shall be upon claimants of the property to rebut this presumption."

souri Revised Statute 195.140 is unconstitutional in that it places the burden of proof upon Michael A. Goth to rebut the presumption that any money found in close proximity to forfeitable controlled substances is presumed to be forfeitable under that statute". Assuming, arguendo, that the constitutional validity of § 195.140, supra, was raised "at the first available opportunity", the fact remains that the "sections of the Constitution claimed to have been violated" were not "specified". Moreover, the term "unconstitutional" employed by Goth was unaccompanied by any quoted constitutional provision or general specificative language otherwise identifying a constitutional provision upon which the charge of unconstitutionality purportedly rested. Granted, the stringent requirement of specificity as to the article and section of the constitution sought to be invoked has been waived on rare occasions where substantial compliance occurred, e.g. quoting the language of the constitutional provision sought to be invoked or employing general specificative language identifying a universally recognized constitutional provision. See: *Dye v. School Dist. No. 32 of Pulaski County*, 355 Mo. 231, 195 S.W.2d 874 (1946); *City of St. Louis v. Friedman*, 358 Mo. 681, 216 S.W.2d 475 (1949); and *Ross v. Robb*, 651 S.W.2d 680 (Mo.App.1983). Goth's attack on the validity of § 195.140, supra, at the trial level on the ground that it was "unconstitutional" failed to properly raise a viable constitutional issue because it neither satisfied the specificity requirement laid down in *City of St. Louis v. Butler Co.*, supra, nor met the test of substantial compliance. In view thereof, it inexorably follows that Goth's first point is not entertainable on appeal and this court, notwithstanding Mo.Const. Art. V, § 3 (as amended 1982), has jurisdiction to hear and determine all remaining issues.

■ Goth's second point, that the trial judge who heard and rendered judgment in the forfeiture proceeding erred in doing so because "exclusive" jurisdiction was vested in another division of the Circuit Court of Johnson County by virtue of a previously filed and pending replevin action, is untenable for a number of reasons.[4] A number of cases are cited and relied upon by Goth for the general proposition that "where two actions involving the *same subject matter between the same parties* are brought in courts of concurrent jurisdiction, the court in which service of process is first obtained acquires exclusive jurisdiction ..." (emphasis added). *State ex rel. General Dynamics Corp. v. Luten*, 566 S.W.2d 452, 458 (Mo. banc 1978). See also: *State ex rel. Kincannon v. Schoenlaub*, 521 S.W.2d 391 (Mo. banc 1975); and *State ex rel. Lamar v. Impey*, 365 Mo. 437, 283 S.W.2d 480 (banc 1955). Suffice it to say, the parties in the replevin action (Goth and the Sheriff of Johnson County and one of his deputies) were not the same as the parties in the forfeiture proceeding (the State of Missouri and Goth). Going a step further, Rule 55.27(g) recognizes that the defense of "another action pending between the same parties for the same cause in this state" may be waived by a litigant. This rule implicitly, if not explicitly, acknowledges the patent distinction between concurrent jurisdiction and subject matter jurisdiction. It is significant that counsel for Goth, shortly before the hearing in the forfeiture proceeding commenced, specifically advised the trial judge, as a matter of record, that it "was ... [his] intention, because of the way this thing has developed, ... to try this one [the forfeiture proceeding] which will in all likelihood resolve the other one [the replevin action] from all practical standpoints, win, lose or draw." This statement spells waiver of any claimed defense that Division I of the Circuit Court of Johnson County had exclusive jurisdiction by virtue of the pending replevin action. Surely Goth cannot seriously contend that a litigant can invite or lull a trial judge into hearing a matter and then, with impunity, contend on appeal that the trial judge's conduct responsive thereto constituted re-

---

**4.** In view of the thrust of Goth's argument, this court deems it unnecessary to address the distinction between divisions of a judicial circuit and separate judicial circuits.

versible error, particularly so, where, as here, there was no per se legal impediment, e.g. want of subject matter jurisdiction, in doing so. Goth's second point is devoid of merit.

 Goth's third point, that the trial court "abused its discretion" in denying his application "for a change of judge *for cause*", affords no basis for relief. On May 20, 1982, the trial court set the forfeiture proceeding for hearing on June 20, 1983. Goth's application for change of judge on June 17, 1983, was not timely filed. Rule 51.05. However, since Goth in his application for change of judge did not rely on the minimal assertion approved under Rule 51.05, but instead, alleged bias and prejudice on the part of the trial judge, review of whether the trial judge "abused" his "discretion" is cognizable on appeal. *In Re Marriage of Frankel*, 550 S.W.2d 896, 898 (Mo.App.1977). Goth's application for change of judge was presented to and heard by the trial judge on June 20, 1983, immediately preceding the forfeiture hearing. In support thereof, according to the record, Goth's counsel advised the trial judge that Goth had previously made statements to law enforcement officials implicating the trial judge in "wrongdoing", the assistant prosecuting attorney who was a party to the "agreement" previously mentioned, and who would appear as a witness on behalf of Goth at the hearing, had discussed Goth's implication of "wrongdoing" on the part of the trial judge with law enforcement officials, and the trial judge had previously presided over a criminal trial in which Goth was convicted of an unrelated drug offense and given a suspended imposition of sentence. The aforementioned constituted the foundation for Goth's charge of bias and prejudice on the part of the trial judge. Goth builds his argument on this foundation by summarily concluding that under Rule 2, Canon 3 C(1)(a)[5], the trial judge abused his discre-

tion in not recusing himself. In the context of Rule 2, Canon 3 C(1)(a), "impartiality" is measured in terms of whether " 'a reasonable person would have factual grounds to doubt the impartiality of the court.' " *Berry v. Berry*, 654 S.W.2d 155, 159 (Mo.App.1983). On appellate review, a trial judge's rejection of charges of bias and prejudice purportedly reflecting a want of "impartiality" is tested in light of whether he abused his discretion. Id. 159. Goth's summary conclusion that the trial judge was biased and prejudiced, i.e. lacking "impartiality", because he had previously presided over a criminal trial when Goth was convicted of an unrelated drug offense and given a suspended imposition of sentence, is fallaciously drawn. In *Cox v. U.S.*, 309 F.2d 614, 619–20 (8th Cir.1962), the court held that a trial judge was not disqualified in a criminal case because he had sentenced the accused in a prior criminal case. See also: *Barnes v. U.S.*, 241 F.2d 252 (9th Cir.1956); and *State v. Faber*, 499 S.W.2d 790 (Mo.1973). Goth's summary conclusion that the trial judge was biased and prejudiced, i.e. was not "impartial", because Goth had previously implicated him in "wrongdoing" and the assistant prosecuting attorney had discussed Goth's incrimination of the trial judge in "wrongdoing" with law enforcement officials, is also fallaciously drawn. When these matters were first broached to the trial judge immediately prior to commencement of the forfeiture hearing, the trial judge stated of record it was the first time he was aware that Goth had implicated him in any "wrongdoing" and that Goth's doing so "did not bother him". This court is quick to note, in all fairness to the highly respected and able trial judge, that Goth's incriminatory charges of "wrongdoing" never materialized. The closest Missouri case found bearing upon this aspect of Goth's charge of bias and prejudice on the part of the trial judge is *State v. Hohensee*, 473

---

**5.** Rule 2, Canon 3 C(1)(a):

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;"

S.W.2d 379 (Mo.1971). In *Hohensee,* just prior to the commencement of defendant's trial for burglary, defense counsel advised the trial judge that defendant "was one of the persons whom the police attempted to tie the burglary [which previously occurred] of Your Honor's home to...." Defense counsel then suggested that the trial judge "might want to disqualify" himself. The trial judge noted, in refusing to disqualify himself, that mere suspicion of defendant by the police, absent more, "would lead the Court to believe that they have no reason to ..." proceed further. The trial judge further noted that if the police had no reason to pursue their suspicion of defendant he had "no reason to view him [defendant] in any way other than as if this matter had never been brought to the Court's attention." Id. 382. The supreme court held that "[t]he fact that they [the police] merely questioned him [defendant], without more, would certainly not be any basis for saying that ... [the trial judge] ... (who had no knowledge of it until mentioned in court) was 'interested or prejudiced.'" Fully aware that *State v. Hohensee,* supra, is of questionable relevancy, this court has no choice but to delve further into this aspect of Goth's third point. In doing so, a more compelling reason springs to mind for holding that the trial judge did not abuse his discretion in refusing to recuse himself. Theoretically, a case could never go to trial if a litigant could disqualify a trial judge by the simple expedient of making the trial judge aware on the eve of trial of spurious attacks previously made by the litigant on the character and integrity of the trial judge. Absent some indication in the record that the trial judge took umbrage to such unwarranted accusations, and the record in the instant case demonstrates that the trial judge did not feel offended, this court is unwilling to brand the trial judge with an abuse of discretion for not disqualifying himself. To hold otherwise would be tantamount to subscribing to the belief that trial judges of impeccable integrity and impartiality can be disqualified by spurious allegations at the whim and caprice of litigants. Impugning the integrity of a trial judge must be based on something more solid than speculation or conjecture. Accordingly, Goth's third point is rejected.

▮ Goth's fourth point levels error at the trial court for refusing to grant his motion for a continuance. Granting or denying a continuance is discretionary with the trial court. *Chapman v. St. Louis County Bank,* 649 S.W.2d 920, 922 (Mo. App.1983). Appellate review of the trial court's exercise of discretion does not pivot on whether a reviewing court would have exercised its discretion in like manner, but whether the trial court abused its discretion. *Chapman v. St. Louis County Bank,* supra; and *Moslander v. Dayton Tire & Rubber Co.,* 628 S.W.2d 899, 902 (Mo.App.1981). The discretion vested in the trial court may not be exercised arbitrarily and on appellate review the facts must be examined to determine whether the trial court abused its discretion. *Missouri Public Service Co. v. Argenbright,* 457 S.W.2d 777, 785 (Mo.1970); and *Shelton v. Mo. Baptist Foundation,* 573 S.W.2d 121, 124 (Mo.App.1978). Goth posits his claim of an abuse of discretion on the part of the trial judge in refusing to grant his motion for a continuance on the following grounds: (1) the court previously granted the State a continuance; (2) the State, prior to trial, failed to disclose the identity of one of the witnesses it called; and (3) the State was permitted to introduce a bag of "hashish" at the hearing although it had previously advised Goth's counsel that it did not intend to do so.

The first ground, supra, relied on by Goth to support his charge that the trial judge abused his discretion in not granting a continuance is so ethereal it defies legal comprehension. Perforce, it is rejected.

Attention next focuses on the second ground relied on by Goth to support his charge that the trial judge abused his discretion in not granting Goth's application for a continuance, to-wit, that the State failed to disclose the identity of one of its witnesses prior to trial. Whether or not the State disclosed the controversial wit-

ness by supplementing its answer, well in advance of the hearing date, to an interrogatory previously propounded by Goth is factually disputed. The State claims it did, Goth claims it did not. It should be noted that no oral request for a continuance was ever made by Goth during the course of the hearing. Frankly, this court is unable to perceive how the ground in question relates to or is in any way reconcilable with Goth's application for a continuance filed prior to the hearing, and heard and denied by the trial judge on June 20, 1983, immediately prior to commencement of the forfeiture hearing. The second ground of Goth's fourth point is predicated on the trial judge's refusal to grant a prehearing motion for continuance, not on an objection to the admission of testimony of a witness who was purportedly undisclosed by the State in response to discovery. Notwithstanding this court's dilemma, the record reveals that prior to the time the witness in question took the stand the trial judge ordered a recess for whatever period of time was needed by Goth's counsel to talk to the witness. Goth's counsel not only "talked" with the witness, but was offered and refused additional time to do so by the trial judge. Moreover, Goth has not undertaken to demonstrate, much less show, how he was in any way prejudiced by the state's alleged failure to disclose the identity of the witness in question prior to the forfeiture hearing.

The third ground relied on by Goth to support his charge (point four) that the trial judge abused his discretion in not granting Goth's application for a continuance is as dilemmatic as the second ground. At the risk of being repetitious, Goth's fourth point is predicated on the trial judge's refusal to grant Goth's prehearing motion for a continuance, not on an objection to the admission of an exhibit (hashish) which the state purportedly advised Goth it

did not intend to introduce. With respect to both grounds two and three, the trial judge cannot be faulted for lack of prescience at the time the application for a continuance was heard and disposed of that unanticipated events that might or might not occur at the subsequent hearing were included as grounds for a continuance. Goth's fourth point is factually and legally unsustainable.

■ Under point five Goth contends that the U.S. currency in question, along with other items of evidence, offered by the State and admitted into evidence, were inadmissible because they were obtained by warrantless searches in violation of the Fourth Amendment to the Constitution of the United States.[6] Neither the U.S. currency nor the other items of evidence addressed by point five were found or seized in Goth's residence until after the deputy sheriff obtained Goth's consent at the hospital to search his residence. Goth never withdrew or retracted consent to search his residence. When Goth gave consent to search his residence he was neither under arrest nor under suspicion for any criminal offense, and it was freely given and obtained in a noncustodial atmosphere. Consensual searches are classic exceptions to the warrant requirement of the Fourth Amendment to the Constitution of the United States. "The search of property without warrant but with proper consent voluntarily given is valid under the fourth amendment." *State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973).

■ The test for determining the validity of a consensual search is whether, under the totality of the circumstances, the consent was given voluntarily and without coercion. *U.S. v. Dennis*, 625 F.2d 782, 793

6. In connection with point five (U.S. Const. amend. IV) and point six (U.S. Const.amends. V and VI), a line of federal cases involving federal forfeiture proceedings, exemplified by *U.S. v. One 1979 Mercury Cougar XR–7*, 666 F.2d 228 (5th Cir.1982), and *U.S. v. Eighty-Eight Thousand, Five Hundred Dollars*, 671 F.2d 293 (8th Cir.1982), hold that although illegal seizure of forfeitable goods does not "immunize" them from forfeiture, the government cannot rely on tainted evidence obtained in violation of a claimant's constitutional rights to prove "probable cause" to sustain forfeiture.

(8th Cir.1980). The only argument raised by Goth that his consent was not given "voluntarily" and without "coercion" centers solely on the fact that consent to search his residence was not given until after the deputy sheriff indicated that a search warrant would be obtained. As held in *U.S. v. Dennis*, supra, 625 F.2d at 793, the fact that a law enforcement officer indicates that he would attempt to obtain or was obtaining a search warrant does not " 'vitiate an otherwise consensual search'." See also *U.S. v. Culp*, 472 F.2d 459, 461 n. 1 (8th Cir.1973), cert. denied 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973). Goth's fifth point affords no basis for appellate relief.

 Goth next contends (point six) that certain statements made by him, admitted into evidence over his objection, tracing the sums of U.S. currency to drug activities which he had engaged in, were obtained in violation of his rights under the Fifth and Sixth Amendments to the Constitution of the United States. To put this point in proper context, an appropriate reminder is in order. The statements in question were made to various law enforcement officials after the "agreement" heretofore mentioned was reached between Goth's attorney and the assistant prosecuting attorney of Johnson County. As drawn from the record, the complained of statements were made by Goth in fulfillment of his part of the "agreement" previously mentioned. Goth at no time indicated, directly or by innuendo, that he wanted counsel present, that he was reluctant to talk, or that the statements were in response to questions beyond the purview of the "agreement". A person may waive sundry constitutional rights and privileges, among which are: (1) the right to remain silent (U.S. Const.amend. V), *Miranda v. Arizona*, 384 U.S. 436, 474–78, 86 S.Ct. 1602, 1627–29, 16 L.Ed.2d 694 (1966), and *State v. Fields*, 434 S.W.2d 507, 514 (Mo.1968); and (2) the right to counsel (U.S. Const.amend. VI), *Miranda v. Arizona*, supra, 384 U.S. at 475–78, 86 S.Ct. at 1628–29 and *State v. Fields*, supra, 434 S.W.2d at 514. The record on appeal supports the conclusion that Goth "voluntarily" and without "coercion" waived his right to counsel and to remain silent, thus freeing the trial court of any errors of constitutional dimension in admitting Goth's statements into evidence. Accordingly, Goth's sixth point fails to raise any grounds for appellate relief.

 Attention now focuses on Goth's seventh and final point—that the judgment of forfeiture was not supported by "competent and substantial" evidence because under the terms of the "agreement" reached between his counsel and the assistant prosecuting attorney of Johnson County, any currency or other property belonging to him which might be found in his residence would be returned to him. In support of this point, Goth vigorously contends, if correctly perceived by this court, that the State breached the "agreement" and that its breach thereof nullified any statements he made regarding the U.S. currency and its drug-related source and divested them of any probative value to support any right of forfeiture claimed by the State.

Section 195.140.2(1), RSMo Supp.1983, provides, inter alia, that "[e]verything of value furnished, or intended to be furnished, in exchange for a controlled substance ... [and] all proceeds traceable to such an exchange ... shall be forfeited ...." The statements made by Goth and introduced by the State clearly demonstrate that the U.S. currency in question was obtained by Goth from the sale of controlled substances. The answer to whether the law enforcement officials, as contended by Goth, were to return the U.S. currency in question to him under the terms of the "agreement" previously mentioned lies in the transcript on appeal. The assistant prosecuting attorney of Johnson County, the only immediate party or witness to the "agreement" who testified at the hearing, was called as a witness by Goth. It is noted that Goth's attorney, the only other immediate party or witness to the "agreement", did not take the stand as he represented Goth at the forfeiture hearing. A close examination of the transcript

on appeal reveals that the assistant prosecuting attorney who, as noted, appeared as a witness on behalf of Goth, arguably on direct examination and particularly on cross-examination, testified first one way and then another with respect to whether return of the U.S. currency to Goth by the law enforcement officials was a provision or part of the "agreement". On direct examination, when first asked about the terms of the "agreement", the assistant prosecuting attorney made no mention whatsoever of any agreement to return the U.S. currency or any other items of property to Goth in return for his cooperation. In response to some unobjected to leading questions which followed, the assistant prosecuting attorney testified that whatever money was found was to be returned to Goth under the "agreement". When the agreement was "struck", the $29,000.00 in U.S. currency had not been found or seized and none of the law enforcement officials knew of its existence at that time. At several points during cross-examination, the assistant prosecuting attorney testified that there was no agreement to return any money to Goth. Conversely, at several other points during cross-examination, the testimony of the assistant prosecuting attorney indicated that the return of whatever money was found to Goth was a part of the "agreement". Further, on cross-examination the assistant prosecuting attorney was confronted with certain testimony he gave in a deposition taken in the criminal cases pending against Goth's assailants. He admitted that in response to a question put to him at that time as to the terms of the "agreement" he made with Goth's attorney, nothing was said about the return of any money or other property to Goth. Although the deposition testimony of the assistant prosecuting attorney did not constitute substantive evidence to prove the terms of the "agreement", it affected the credibility of those portions of his testimony at the forfeiture hearing indicating that return of any money or property to Goth was a term or part of the "agreement". Disposition of Goth's seventh and final point is concluded by reference to the well-established rules that the trier of facts may believe all, part or none of the testimony of a witness, and that, in a court-tried case, such as here, it is assumed that the trial judge believed that testimony consistent with his findings and judgment. *McComas v. Umlauf,* 641 S.W.2d 809, 812 (Mo.App. 1982); and *State ex rel. Hillhouse v. Hunter Raffety Elevator, Inc.,* 636 S.W.2d 400, 402 (Mo.App.1982). Goth's seventh and final point is refuted by the law and the evidence and, accordingly, the judgment of forfeiture was supported by "competent and substantial" evidence.

Two cases cited by Goth in support of his seventh and final point, *State ex rel. Whitener v. Kixmiller,* 664 S.W.2d 220 (Mo. App.1984), and *State v. Patchen,* 652 S.W.2d 265 (Mo.App.1983), are wholly inapposite as the issues addressed and the facts involved in both are completely dissimilar.

Judgment affirmed.

All concur.