### In re the MARRIAGE OF Cheryl R. BURROUGHS, Respondent,

### and

### Michael R. Burroughs, Appellant.

### No. 48839.

Missouri Court of Appeals, Eastern District, Division Two.

May 14, 1985.

Raymond Howard, St. Louis, for respondent.

Marc P. Weinberg, St. Louis, for appellant.

CROW, Special Judge.

Michael R. Burroughs ("Michael") appeals from an order modifying the child support and temporary custody provisions of a decree of dissolution of marriage.

Michael's marriage to Cheryl R. Burroughs ("Cheryl") was dissolved February 7, 1979. The decree, among other things, awarded custody of the parties' child, Shawn Ricardo Burroughs ("Shawn"), then age two, to Cheryl. Michael, in addition to reasonable visitation rights, was awarded temporary custody of Shawn six weeks each summer commencing when Shawn reached age four. Michael was ordered to pay Cheryl $35 per week child support.

On August 25, 1983, Cheryl filed a motion seeking an increase in the child support to $100 per week and a "modification" of Michael's visitation and temporary custody rights. Michael filed an answer to Cheryl's motion, and also filed a "cross-motion" seeking primary custody of Shawn or, in the alternative, increased visitation and temporary custody.

An evidentiary hearing on these motions on May 23, 1984, resulted in an order raising the child support to $55 per week and reducing Michael's summer custody of Shawn to one month (either July or August, at Michael's option). This appeal followed.

Michael's first assignment of error is that the trial court failed "to make specific findings of controverted facts, as requested by [Michael], pursuant to Rule 73.01 regarding the financial ability of each party to support the child."

At the start of the trial, Michael's attorney stated: "For the record, if I may, I would like to make a motion at this time, pursuant to Rule 73.01, to make specific findings of controverted facts regarding the financial ability of each party to support the child in question."

The judge denied the request. His explanation for doing so ended with this comment: "You know when you make that motion there is no possibility I can make a finding as to how much child support goes to food, laundry, and so forth. All I can do is take the cost of living and work it out that way."

Michael's attorney responded: "For the record, perhaps the court misunderstood what I was asking. I was asking for a specific percentage opinion based on the facts, but also on the controverted facts and the financial abilities of each party, not regarding how the child support per se is figured out."

The judge repeated his belief that it was impossible to comply with the request. No findings of fact were made.

Rule 73.01(a)(2)[1] provides that in cases tried without a jury, the court, if requested by counsel, shall "include its findings on such controverted fact issues as have been specified by counsel."

█ We are unable to descry, from the comments of Michael's attorney at trial, what fact issues he wanted the judge to resolve. If the objective of Michael's attorney was to have the judge make specific findings regarding such items as the respective incomes of the parties, or their respective monthly outlays for rent, utilities, medical care, debt payments, and the like, Michael's attorney could have easily said so. His comments, however, yielded no clue. Having failed to identify any specific fact issue for the judge to determine, counsel can assign no error. *Dardick v. Dardick*, 670 S.W.2d 865, 867[1] (Mo. banc 1984); *Snider v. Snider*, 570 S.W.2d 770, 774–75[2] (Mo.App.1978).

Michael's second point is:

"The trial court's statements and rulings expressed a prejudicial disposition to grant [Cheryl's] motion to modify prior to hearing the evidence or determining the credibility of the witnesses."

During trial, while Michael's attorney was cross-examining Cheryl, the judge stated that the line of inquiry being pursued by Michael's attorney was not helpful to the judge and was a waste of time.

Michael's attorney responded: "Well, your Honor, with due deference to the Court, because of its bias and prejudice against myself and my client in hearing this case, I would ask that you recuse yourself and get another judge to impartially hear the matter determining the financial affairs of the parties, in determining the modification, if any, she is allowed."

The judge denied the request.

Michael's contention on appeal, as we comprehend it, is that the judge, by various comments, inquiries and rulings, exhibited a "predisposition" to decide in favor of Cheryl, which attitude deprived Michael of his right to a fair trial before an unbiased judge.

Cheryl, citing Rule 51.05, points out that Michael filed no application for change of judge prior to trial.[2] Cheryl maintains that Michael is consequently precluded from complaining on appeal that the judge was biased against him.

█ We disagree. The absence of a pretrial application for change of judge does not foreclose a party from asserting on appeal that the judge was prejudiced against him. Allegations of bias and prejudice of a trial judge toward a litigant have been considered on appeal where the aggrieved litigant filed an untimely application for change of judge immediately before trial, *In re Marriage of Frankel*, 550 S.W.2d 896, 898[5] (Mo.App.1977); where the aggrieved litigant filed an untimely application for change of judge during trial, *City of St. Louis v. Boos*, 503 S.W.2d 133, 136[7] (Mo.App.1973); where the aggrieved litigant filed a motion to disqualify the judge after the evidence had been completed, *Berry v. Berry*, 654 S.W.2d 155 (Mo.App.1983); and where the aggrieved litigant made no request at all for a change of judge, *Rutlader v. Rutlader*, 411 S.W.2d 826, 831–32[9] (Mo.App.1967).

We have, accordingly, studied the record carefully, scrutinizing each incident to which Michael has directed our attention. While the judge was perhaps abrupt and, on occasion, impatient with Michael's attorney, we are not persuaded that the judge's attitude or conduct denied Michael a fair trial. Indeed, the judge carefully explained to the parties that he could not give each party all of the custody that each wanted and that he had to try to decide the case

---

1. Rule references are to Missouri Rules of Civil Procedure (15th ed. 1984).

2. In his reply brief, Michael states he did not know who the judge would be until the day of trial.

equitably and fairly. The judge pointed out the difficulty of raising a child "by a court order," and he encouraged the parties to work out the temporary custody problems together.

In *Berry*, 654 S.W.2d 155, a dissolution case, the judge, after the evidence was concluded, sent counsel a draft of his proposed decision on all contested matters. One of the rulings granted custody of the parties' two children to the husband. The wife promptly filed a "motion to disqualify" the judge on the ground that the judge's spouse was the schoolteacher of the older child. The wife asserted that her husband had attended certain of the child's school activities and had discussed the child's academic progress with the judge's spouse. The judge denied the motion without a hearing. That ruling was upheld on appeal, the opinion noting that there was no allegation that the judge had discussed the case with his spouse or that the judge had received from his spouse any information about the child or the father.

Pertinent to Michael's second point, *Berry* states that a judge should disqualify himself if a reasonable person would have factual grounds to doubt his impartiality. *Id.* at 159. The issue the judge must determine is whether his impartiality might reasonably be questioned. *Id.* Once the judge makes that determination, the role of the appellate court is to decide whether the judge's evaluation of the claim of partiality or prejudice amounted to an abuse of discretion. *Id.* A claim of bias must be evaluated in light of the full record, not simply in light of an isolated incident. *Id.*

In re $29,000 in *U.S. Currency*, 682 S.W.2d 68 (Mo.App.1984), cites *Berry* with approval, applying the same principles in determining whether the trial judge erred in denying an untimely pretrial application for change of judge which alleged the judge was biased and prejudiced. 682 S.W.2d at 74.

■ Applying the principles of *Berry* and *U.S. Currency* to the record before us, we cannot convict the judge of error in refusing to abort the trial and disqualify

himself when Michael's attorney made that request during trial, nor can we say that a reasonable person, on the whole record, would have factual grounds to doubt the judge's impartiality or to reasonably question his impartiality. Without separately discussing each instance seized upon by Michael as evidence of judicial prejudice, we note that most have to do with procedural or evidentiary issues, one being the subject of Michael's first assignment of error, which we have rejected. Another is the subject of the upcoming assignment of error and, as will become evident, manifests no bias by the judge against Michael. In sum, the incidents enumerated by Michael, in our opinion, neither individually nor collectively supply factual grounds to reasonably question the judge's impartiality. Michael's second point is, accordingly, denied.

The next assignment of error we discuss pertains to a ruling by the judge at the close of Cheryl's evidence. When Cheryl rested her case, Michael's attorney stated: "At this time, before I call my first witness, if necessary, I would like to make a motion to this Court, pursuant to Rule 55.-27, specifically A–6 and G, and the motion being that the pleading fails to state a claim upon which relief can be granted. I would ask the Court if it could briefly review the petition that was filed on behalf of the petitioner [Cheryl]."

The judge denied the motion.

Michael assigns error, insisting that Cheryl's motion to modify fails to state a claim on which relief can be granted. Michael asserts that Cheryl's allegations, even if proven, would not demonstrate a change in circumstances so substantial and continuing as to make the terms of the dissolution decree unreasonable.

Cheryl's motion to modify, of course, attempted to plead grounds for *two* different types of relief: an increase in the child support and a reduction in Michael's temporary custody rights. For the reasons that follow, we need not decide whether Che-

ryl's motion states a claim on which either type of relief could be granted.

■ Dealing first with the child support, we note that during the presentation of Cheryl's evidence, there was no objection by Michael that any of the evidence bearing on that issue was inconsistent with, or beyond the scope of, Cheryl's motion to modify. Indeed, Michael's counsel, in cross-examining Cheryl, inquired in detail about her earnings since the 1979 dissolution, her current expenses, and certain sums withheld from her wages.

Under Rule 55.33(b), when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. This rule has been held applicable to the trial of a motion to modify a dissolution decree. *Holt v. Holt*, 633 S.W.2d 171, 173 (Mo.App.1982). We therefore hold that inasmuch as the evidence relevant to the child support issue was received without protest by Michael during Cheryl's case and much of that evidence was elicited by Michael's cross-examination of Cheryl, the issue was tried by consent and Cheryl's motion to modify is deemed amended to conform to the evidence. *Seaton v. Weir*, 633 S.W.2d 212, 214[2] n. 4 (Mo.App.1982); *Moranz v. Schiller*, 525 S.W.2d 785, 787[4] (Mo.App. 1975).

Consequently, we shall review the evidence relevant to the child support issue to see whether it is sufficient to support the increase from $35 per week to $55 per week. In doing so, we dispose of one component of Michael's remaining assignment of error, i.e., that the evidence was insufficient to support that increase.

Shawn, two years of age when the decree of dissolution was entered in 1979, was seven at the time of the hearing in issue here. Cheryl's gross earnings in 1979 were approximately $13,000; they were $19,000 at the time of the hearing. A written statement of income and expenses prepared by Cheryl and received in evidence by the judge included the following among the monthly items of expense for Shawn: food, $175; clothing, $75; medical and dental care, $45; barbershop, $20; school and books, $10.

Michael, according to the evidence, had annual earnings of $12,000 in 1979. His estimated annual earnings at the time of the hearing were $30,000.

■ Under § 452.370.1, RSMo Cum. Supp.1983, the provisions of a decree respecting child support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the existing terms unreasonable. *In re Marriage of Cook*, 636 S.W.2d 419, 421[3] (Mo.App.1982); *Jurgens v. Jurgens*, 616 S.W.2d 567, 568–69[1–3] (Mo.App.1981). However, inflationary trends and the needs of a growing child are valid reasons for modification if it is demonstrated that these conditions render the existing order unreasonable. *Walck v. Walck*, 651 S.W.2d 559, 561[2] (Mo.App.1983); *Cook*, 636 S.W.2d at 421[4]; *Hallums v. Hallums*, 585 S.W.2d 226, 228[2] (Mo.App. 1979).

■ Here, more than five years had elapsed between the entry of the decree of dissolution and the hearing on Cheryl's request for more child support. Those years spanned a period of spiraling inflation. *Walck*, 651 S.W.2d at 561. Shawn, during that 5-year interval, had grown into a schoolchild and was completing the first grade. Cheryl explained that Shawn was going to be tested to determine whether he is a gifted child. According to Cheryl, her current expenses for Shawn, just for the items mentioned earlier, total $325 per month. The child support provided in the dissolution decree, $35 per week, amounts to less than half those expenses.

There was, accordingly, substantial evidence to support a finding of changed circumstances so substantial and continuing as to make the child support provided by the dissolution decree unreasonable.

■ Once that showing is made, Michael's enhanced income becomes a relevant factor in judging his ability to provide

greater support. *Bellis v. Bellis*, 664 S.W.2d 12, 13[1] (Mo.App.1983); *Plattner v. Plattner*, 567 S.W.2d 139, 142[9] (Mo. App.1978). Michael's annual earnings, by his own testimony, were, at the time of the hearing, more than double what they were at the time of the dissolution.

■ On this record, we hold that the child support increase ordered by the judge was supported by substantial evidence and was not against the weight of the evidence. Michael's contention to the contrary is denied.

We next address Michael's contention that the evidence was insufficient to support the judge's reduction of Michael's temporary custody rights. On that issue, we agree with Michael.

Cheryl testified that Shawn had said six weeks at Michael's is "much too long." Cheryl added that Shawn claimed he "gets spankings" at Michael's house, and that Shawn "came back sick" once after visiting Michael. The record is silent, however, as to whether the illness occurred during a weekend visit or the summer custody period. According to Cheryl, "He [Shawn] loves his Daddy, but he does not wish to stay there that long, and I can understand that, and I don't wish him to stay that long, either."

Michael's present wife, Melinda, testified that Shawn spent six weeks with them in the summer of 1983. In addition, Michael has temporary custody of Shawn two weekends each month, and Melinda, of course, sees Shawn on those occasions. Melinda recalled seeing Michael spank Shawn for disciplinary purposes, but she never observed any indication by Shawn that he did not want to stay with Michael.

That is all the evidence there was on the temporary custody issue.

■ Section 452.410, RSMo 1978, provides that a court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. The burden of proving those prerequisites to modification was upon Cheryl. *Knoblauch v. Jones*, 613 S.W.2d 161, 165–66[2] (Mo.App.1981).

■ The only significant changes in circumstances relative to custody since the dissolution were that Shawn had become seven years of age and that Michael had married Melinda. Shawn's present age would appear to indicate, if anything, that it is more appropriate now for Shawn to spend six weeks with Michael than when Shawn was younger, and there is no suggestion in the record or the briefs that Melinda's presence in Michael's home is detrimental to Shawn or that Shawn is uncomfortable around Melinda.·

The changes in circumstances shown by the record before us are, in sum, insufficient to support a finding that the reduction in Michael's temporary custody is in Shawn's best interests.

Cheryl points out that Michael's six weeks of temporary custody were granted by a provision in the dissolution decree that became effective when Shawn reached age four. Citing *N.K.M. v. L.E.M.*, 606 S.W.2d 179 (Mo.App.1980), Cheryl asserts that this provision amounted to an automatic modification without a hearing and that we should treat it as surplusage. The provision in *N.K.M.*, however, was of a different nature than the temporary custody provision in the decree here. The provision in *N.K.M.* stated that a violation of certain conditions would constitute a change of circumstances affecting the custodial parent's right to custody and would result in a change of custody to the noncustodial parent. Nothing like that appears in the dissolution decree in the instant case.

■ Moreover, neither Michael nor Cheryl appealed from that decree, hence the temporary custody provision therein was *res judicata, Gori v. Gori*, 490 S.W.2d 282, 283–84[2] (Mo.App.1973), subject, of course, to modification per § 452.410, RSMo 1978.

Having determined that Cheryl failed to sustain her burden of proof under § 452.-410, we hold that the trial court erred in reducing Michael's temporary custody rights. Having reached that conclusion, we need not decide whether Cheryl's motion to modify stated adequate grounds for modifying that provision of the dissolution decree, nor need we rule on Michael's remaining assignment of error, which challenges the admissibility of Cheryl's testimony wherein she recited Shawn's statements about being in Michael's custody.

The order of May 23, 1984, is affirmed in all respects[3] except that part which modifies the visitation and temporary custody provisions of the decree of dissolution. That part of the order of May 23, 1984, is reversed. Michael's visitation and temporary custody rights shall remain as provided in the decree of dissolution.

SIMON, P.J., and STEPHAN, J., concur.

**3.** The order contains provisions that were unchallenged on appeal and, consequently, unmentioned in this opinion.