STATE of Missouri,
Plaintiff-Respondent,

v.

Christian WRIGHT, Sr.,
Defendant-Appellant.

No. 51828.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 7, 1987.

Motion for Rehearing and/or Transfer
Denied Aug. 6, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Mary E. Dockery, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., and Jeffrey P. Dix, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

DOUGLAS W. GREENE, Special Judge.

Christian Wright, Sr. was jury-convicted of murder in the second degree, § 565.021.-1,[1] and sentenced to 18 years imprisonment.

On appeal, Wright contends that the trial court erred in overruling his motion for acquittal, admitting improperly seized evidence, and admitting evidence of other crimes. We affirm.

Wright contends that all of the evidence pointed to the fact that the victim, Stephanie Hughes, who was Wright's live-in girl friend and mother of his two sons, committed suicide and, therefore, there was a lack of sufficient evidence from which a second degree murder charge against him could be submitted to the jury.

In review of this point, we are mindful of the rule of law which requires that in claims of insufficient evidence to support submission of a criminal charge, all evidence in the record tending to support the guilty verdict and all reasonable inferences to be drawn therefrom must be taken as true, and all contrary evidence is to be disregarded. *State v. Applegate*, 668 S.W.2d 624, 627 (Mo.App.1984). Viewed in this light, the evidence introduced at trial was as follows.

On July 22, 1985, Stephanie Hughes, while in the apartment she, Wright and their children shared, was shot in the chest with a .357 magnum pistol. Wright noti-

---

1. Unless otherwise indicated, all references to statutes are to RSMo. 1978, V.A.M.S.

fied a neighbor who called 911 emergency and reported the shooting. John Simon, a firefighter trained as an emergency medical technician, arrived and attempted to resuscitate Stephanie, but was unable to do so. St. Louis County Police Officers Jones and Mayfield arrived at the scene and interviewed Wright. Wright first told the officers that he had gone to buy cigarettes, and that when he returned to the apartment, he heard a "crack or a loud sound" like a "firecracker." When he entered the apartment, Wright found Stephanie lying in a closet, shot in the chest. He blamed Russell Jarmon, Stephanie's brother-in-law, for the shooting. Wright told the officers he owned a pistol, but that it was at his mother's house.

Later, Wright changed his story, and said that when he returned home from the store, Stephanie was holding a gun, a .357 magnum, to her chest, and that as he reached for it, the gun went off, the bullet striking the girl in the chest. Wright said he then hid the pistol, which belonged to him, in a closet as he was afraid that, because he and Stephanie had been fighting in the past, the police would accuse him of murdering her. Wright told Officer Jones where he had hidden the pistol and the officers recovered it.

Wright was then taken to the police station where he was asked to demonstrate how Stephanie was holding the gun when she was shot. When he did so, and was told it was impossible for Stephanie to have shot herself in the chest with the gun held in that position, he changed his version of how Stephanie was holding the gun. Later, Wright told Officer Nesbitt another version which was that he and Stephanie were arguing and that during the argument he struck Stephanie on her head several times, knocked her to the floor of the closet, pulled a gun and pointed it at Stephanie. He said they struggled for possession of the gun and that during the struggle, the weapon discharged, striking Stephanie in the chest. At trial, Wright gave yet another version of events. He testified that he found Stephanie inside the closet pointing the gun at herself and that before he could get to her, the gun went off.

There was testimony that Wright was a violent person who had previously beaten Stephanie and threatened to kill her. Wright discovered that Stephanie had, several years earlier, had an affair with her brother-in-law, Russell Jarmon. When he found this out, Wright cursed and beat Stephanie, and threatened to kill her with his .357 magnum pistol. Autopsy results showed evidence of those beatings. Early on the morning of the killing, as Christine Jarmon, Stephanie's sister, was leaving Wright's apartment, Wright told her that she "should not leave, that I was the last chance my sister had." In addition, there was evidence that after the shooting Wright asked a neighbor, Deborah Fair, to let him hide his pistol in her apartment. When Deborah refused, Wright hid it himself in his own closet.

■ These facts and circumstances were more than sufficient for a jury to find, beyond a reasonable doubt, that Wright had knowingly caused the death of Stephanie Hughes by shooting her and was, therefore, guilty of the crime of murder in the second degree. The point has no merit.

Wright also contends that the search for, seizure of, and admission into evidence of his .357 magnum pistol, which was the murder weapon, was violative of his constitutional rights in that the search and seizure were not conducted "pursuant to a valid exception to the warrant requirement."

■ The reasonable expectation of privacy that the United States and Missouri constitutions protect by requiring search warrants, except in cases where recognized exceptions to that constitutional mandate are permitted, is not a subjective expectation, but is an expectation of privacy society is prepared to accept as reasonable. *State v. Peters*, 695 S.W.2d 140, 145 (Mo. App.1985). Exceptions to the general rule that warrantless searches are per se unreasonable include consent searches, as long as the consent to the search was voluntary, and not the product of duress, coercion, or fraud. *State v. Johns*, 679 S.W.2d 253, 261 (Mo.1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796. Whether consent is voluntary is determined by the totality of the circumstances. *In re $29,000.00*

*in U.S. Currency*, 682 S.W.2d 68, 76 (Mo. App.1984).

■ Wright had no reasonable expectation of privacy in the area where the pistol was found. He is the one who told the police that Stephanie was shot with his pistol, and that Wright had hidden the gun in the closet where it was found. By so doing, Wright waived any right of privacy that he might have had to the closet area, and gave his implied consent to the search for the weapon. There is not a shred of evidence that Wright was coerced into telling police officers where the gun was located. To the contrary, he was seeking to advance his accidental shooting version as the cause of Stephanie's death, and was more than willing to tell the police where the gun was. The point has no merit.

Wright's final claim of error is that the trial court erred in its allowance of testimony that Wright, on June 26, 1985, and July 21, 1985, had beaten Stephanie, and while pointing his pistol at her threatened Stephanie with death. Wright contends that proof of these separate crimes violated his right to be tried on the offense for which he was charged, citing *State v. Lasley*, 583 S.W.2d 511 (Mo. banc 1979).

■ The exception to such rule occurs when evidence is introduced to show motive, intent, absence of mistake or accident, common scheme or plan, or the identity of an assailant. *State v. Young*, 661 S.W.2d 637, 639 (Mo.App.1983). Here, evidence of prior attacks by Wright on Stephanie, which were not remote in time from the killing, were relevant to show his animus toward her and his intent to harm his victim. The evidence was related to the crime charged, and the trial court did not err in admitting it. The point has no merit. *State v. Shields*, 709 S.W.2d 556, 558 (Mo. App.1986).

The judgment and sentence are affirmed.

CARL R. GAERTNER, P.J., and SIMEONE, Senior Judge, concur.